IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| CAROL THOMAS YOUNG, individually and as personal representative for the heirs and the ESTATE OF BRANDON JAMES THOMAS; DEBORAH ANN CASIDA, individually and as personal representative for the heirs and ESTATE OF TODD JAMES VENETTE,<br><br>     Plaintiffs,<br><br><br><br>     vs.<br><br><br>DONALD M. FEENEY, JR.; C.T.U., Inc., a North Carolina corporation; DONALD M. FEENEY, JR. d/b/a CTU SERVICES IRAQ; DONALD M. FEENEY, JR. d/b/a CTU ASIA, and JOHN DOES 1 through 10,<br><br>     Defendants. | MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS<br><br><br><br><br><br>Case No. 2:07-CV-296 TS |

This matter is before the Court on Defendants' Motions to Dismiss,[1] in which Defendants

ask the Court to dismiss this case for lack of personal jurisdiction and improper venue.  The

Court heard oral argument from the Parties on March 24, 2008, and took the matter under

advisement.  As outlined below, the Court will grant Defendants' Motions because Defendants

_____

[1]Docket Nos. 12, 39.

1

do not have minimum contacts with the State of Utah to support an exercise of personal jurisdiction over them.

## I.  BACKGROUND

This case for breach of contract and wrongful death arises from the deaths of Brandon Thomas and Todd Venette while providing private security services in Iraq.  Plaintiffs are Carol Young (Mr. Thomas's mother), individually and as the representative of Mr. Thomas's estate, and Deborah Casida (Mr. Venette's mother), individually and as the representative of Mr. Venette's estate.  Defendants are C.T.U., Inc., and Donald Feeney, Jr., individually, doing business as CTU Services Iraq, and doing business as CTU Asia.  Plaintiffs allege that Defendant C.T.U., Inc., CTU Services Iraq and CTU Asia are alter egos of Defendant Feeney.

In their Complaint, Plaintiffs allege that both Mr. Thomas and Mr. Venette entered into employment contracts with Defendants to provide private security services for contractors in Iraq.[2]  According to Plaintiffs, Defendants agreed to provide life insurance to Mr. Thomas and Mr. Venette as part of their respective contracts.  Plaintiffs further allege that Defendants have breached their promise to insure the lives of Mr. Thomas and Mr. Venette.  Plaintiffs also assert that the deaths of Mr. Thomas and Mr. Venette were caused by Defendants' negligence.

In response to the Motions to Dismiss, Plaintiffs argue that this Court has specific personal jurisdiction over Defendants arising from their contacts with Mr. Thomas, a citizen of Utah, during the negotiation of his employment agreement.  According to Plaintiffs, "while stationed at Fort Bragg near Fayetteville, North Carolina in early 2005, [Mr. Thomas] was recruited by [Defendant Feeney] to CTU and subsequently trained for a protective security detail

---

[2]It is unclear whether these were oral or written contracts.  Neither of the Parties has submitted a written contract to the Court.

assignment in Iraq."[3]  After returning to Utah, Mr. Thomas allegedly received multiple phone calls from Defendants to further negotiate his employment and to make arrangements for his travel to Iraq.[4]  While Mr. Thomas was working in Iraq, his paychecks were allegedly wired to his USAA savings account, which listed his Utah address.[5]

## II.  STANDARD OF REVIEW

A plaintiff carries the burden of establishing personal jurisdiction over a nonresident defendant.[6]  "When the evidence presented on the motion to dismiss consists of affidavits and other written materials, the plaintiff need only make a prima facie showing."[7]  "The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits.  If the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor . . . ."[8]

## III.  DISCUSSION

In the Motions to Dismiss, Defendants ask the Court to dismiss this case for lack of personal jurisdiction and for improper venue.

---

[3]Docket No. 3, at ¶ 1.

[4]Docket No. 21, at ¶¶ 8, 11.

[5]*Id.* at ¶ 13.

[6]*Kuenzle v. HTM Sport-Und Freizeitgeräte AG*, 102 F.3d 453, 456 (10th Cir. 1996).

[7]*Bell Helicopter Textron, Inc. v. Heliqwest Int'l, Ltd.*, 385 F.3d 1291, 1295 (10th Cir. 2004).

[8]*Kennedy v. Freeman*, 919 F.2d 126, 128 (10th Cir. 1990).

3

*A.  Motions to Strike*

As a preliminary matter, the Parties have each filed a motion to strike related to affidavits submitted with the briefing of the Motions to Dismiss: (1)  Plaintiffs' Motion to Strike Affidavit of Judy Feeney, and (2) Defendants' Motion to Strike Affidavit of Carol Thomas Young.

In the Feeney Motion, Plaintiffs ask the Court to strike the Affidavit of Judy Feeney, arguing that it is not based on personal knowledge, offers conclusory statements, and does not provide sufficient foundation.  However, Defendant Donald Feeney has since filed an affidavit, to which Plaintiffs do not object, that completely supplants Ms. Feeney's Affidavit.  As Ms. Feeney's affidavit has no affect on the Court's disposition of Defendants' Motions to Dismiss, the Court will deny the Feeney Motion as moot.

In the Young Motion, Defendants ask the Court to strike the Affidavit of Plaintiff Young submitted by Plaintiffs in opposition to Defendants' Motions to Dismiss, arguing it contains statements that are hearsay, lack foundation, are conclusory, or are not based on personal knowledge.

Affidavits submitted in connection with a motion to dismiss on jurisdictional grounds must meet the standards set forth in Federal Rule of Civil Procedure 56(e).[9]  Rule 56(e) requires that affidavits "be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated."  "Under the personal knowledge standard, an affidavit is inadmissible if the witness could not have actually perceived or observed that which he testifies to."[10]  "At the summary judgment stage, evidence

---

[9]*FDIC v. Oaklawn Apartments*, 959 F.2d 170, 175 & n.6 (10th Cir. 1992).

[10]*Argo v. Blue Cross and Blue Shield, Inc.*, 452 F.3d 1193, 1200 (10th Cir. 2006) (internal quotation marks omitted).

need not be submitted 'in a form that would be admissible at trial.'"[11]  Rather, "the content or

substance of the evidence must be admissible."[12]

The Court will disregard a portion of Paragraphs 5 and the entirety of Paragraph 10 of

Plaintiff Young's Affidavit as inadmissible hearsay.

Paragraph 5.  Paragraph 5 reads as follows: "In early 2005, Brandon returned from North

Carolina, where he was receiving Special Forces training with the Utah National Guard, *and*

*advised me that Don Feeney had spoken to him about working for CTU on a personal protection*

*detail in Iraq*."  Plaintiffs argue that this statement is excepted from the hearsay rule as a present

sense impression.  However, the present sense impression exception to the hearsay rule applies

only to statements "describing or explaining an event or condition made while the declarant was

perceiving the event or condition, or *immediately* thereafter."[13]  Mr. Thomas's statement to

Plaintiff Young was not made immediately after his alleged conversations with Defendant

Feeney.  Therefore, the Court will disregard the italicized portion of this Paragraph as

inadmissible hearsay.

Paragraph 10.  In Paragraph 10, Plaintiff Young states: "Brandon told me that his

superior officer at the Utah National Guard knew Feeney and he was able to negotiate a special

'split drill' schedule that would allow Brandon to be in Iraq with CTU for the required three-

month period."  This statement is clearly hearsay.  Nonetheless, Plaintiffs cite to *Celotex v.*

---

[11]*Id.* at 1199 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).

[12]*Id.* (quoting *Thomas v. Int'l Bus. Machs.*, 48 F.3d 478, 485 (10th Cir. 2005)).

[13]Fed. R. Evid. 803(1) (emphasis added).

5

*Catrett*[14] for the proposition that they should not be required to depose their own witness in order to withstand a motion to dismiss, apparently referring to Mr. Thomas's superior officer in the Utah National Guard.

In *Celotex*, the Supreme Court did indeed state that "Rule 56 does not require the nonmoving party to depose her own witness."[15]  However, the very next sentence in the *Celotex* opinion makes clear that the relaxed evidentiary requirements of Rule 56 cannot be strained to allow Plaintiffs to rely on blatant hearsay:

> Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves, and it is from this list that one would normally expect the nonmoving party to make the showing to which we have referred.[16]

Rule 56(c) allows the Court to consider "the pleadings, the discovery and disclosure materials on file, and any affidavits."  Thus, while Rule 56 would allow the Court to consider an affidavit of Mr. Thomas's superior officer in lieu of his deposition testimony, it clearly does not allow the Court to consider the hearsay testimony of Plaintiff Young.  Plaintiffs also argue that Paragraph 10 is excepted from the hearsay rule as a present sense impression.  However, Mr. Thomas's statement was not made *immediately* after perceiving the alleged "split drill" arrangements."[17]  Accordingly, the Court will disregard the entirety of Paragraph 10 of Plaintiff Young's Affidavit.

The Court will also disregard the entirety of Paragraph 9 and portions of Paragraphs 6 and 11 of Plaintiff Young's Affidavit for lack of personal knowledge.

---

[14]477 U.S. 317 (1986).

[15]*Id.* at 324.

[16]*Id.*

[17]*See* Fed. R. Evid. 803(1).

Paragraph 6.  In Paragraph 6, Plaintiff Young states, "*At the time, Don Feeney was acquainted with Brandon and he was aware that Brandon was from Utah* because Brandon was dating Don Feeney's daughter, Stephanie."  The Court will disregard the italicized portion of Paragraph 6 for lack of personal knowledge.

Paragraph 9.  Paragraph 9 reads as follows: "One issue that was preventing Brandon from immediately joining CTU was that Brandon was employed by the Utah National Guard and required to report for drill at least once per month."  The Court will disregard the entirety of Paragraph 9 for lack of personal knowledge.

Paragraph 11.  In Paragraph 11, Plaintiff Young states, "*After these arrangements were made with the Utah National Guard*, CTU made arrangements for Brandon's travel to Iraq by telephone.  I was present for some of these calls while he was in Utah."  The Court will disregard the italicized portion of Paragraph 11 as Plaintiff Young offers no basis for her knowledge of the alleged Utah National Guard arrangements other than the hearsay statement in Paragraph 10.

In summary, the Court grants the Young Motion with respect to the portions of Paragraphs 5, 6, and 11 specified above, and the entirety of Paragraphs 9 and 10, of Plaintiff Young's Affidavit.  The Court denies the Young Motion in all other respects and will consider the remainder of Plaintiff Young's Affidavit for purposes of the Motions to Dismiss.

*B.  Personal Jurisdiction*

Defendants argue that they do not have sufficient minimum contacts with the State of Utah and are, therefore, not subject to the jurisdiction of this Court.  Plaintiffs claim that Defendants reached out to the State of Utah by recruiting and employing Mr. Thomas, a citizen

of Utah and a member of the Utah National Guard, and, therefore, subjected themselves to the jurisdiction of Utah courts.[18]

"'To obtain personal jurisdiction over a nonresident defendant in a diversity action, a plaintiff must show that jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment.'"[19] The Utah long-arm statute is "applied so as to assert jurisdiction over nonresident defendants to the fullest extent permitted by the due process clause."[20]  Accordingly, the Supreme Court of Utah "frequently make[s] a due process analysis first because any set of circumstances that satisfies due process will also satisfy the long-arm statute."[21]

To satisfy the constitutional requirement of due process there must be "minimum contacts" between the defendant and the forum state.[22]  The "minimum contacts" standard may be met by a finding of either general jurisdiction or specific jurisdiction.[23]  In this case, Plaintiffs

---

[18]The Court notes that in the March 24, 2008 hearing, Plaintiffs' Counsel made a general request for jurisdictional discovery.  Defendant CTU, Inc.'s Motion to Dismiss was filed on October 22, 2007.  Yet, at no time in the five months before the hearing did Plaintiffs even mention the possibility of jurisdictional discovery.  The Court will not consider Plaintiffs' untimely request, which was not properly brought before it.  Moreover, in making their general request, Plaintiffs failed to specify what they intend to discover or how discovery would change the issues placed before the Court in two full rounds of briefing on the Motions to Dismiss. Thus, Plaintiffs have provided no basis for granting jurisdictional discovery.

[19]*Soma Med. Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1295 (10th Cir. 1999) (quoting *Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1074 (10th Cir. 1995)).

[20]Utah Code Ann. § 78-27-22.

[21]*SII MegaDiamond, Inc. v. Am. Superabrasives Corp.*, 969 P.2d 430, 433 (Utah 1998).

[22]*World-Wide Volkswagen Co. v. Woodson*, 444 U.S. 286, 291 (1980).

[23]*Benton v. Cameco Corp.*, 375 F.3d 1070, 1075 (10th Cir. 2004).

do not argue that Defendants have the type of "continuous and systematic"[24] contacts with the State of Utah to justify an exercise of general jurisdiction.  Rather, Plaintiffs argue that Defendants are subject to the specific personal jurisdiction of the Court.

Whether a court may constitutionally exercise specific personal jurisdiction over a nonresident defendant requires a two step analysis.[25]  "First [the Court] consider[s] whether 'the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.'"[26]  "Second, 'if the defendant's actions create sufficient minimum contacts, [the Court] must then consider whether the exercise of personal jurisdiction over the defendant offends traditional notions of fair play and substantial justice.'"[27]

To establish minimum contacts within the specific jurisdiction rubric, there must be "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."[28]  A showing of purposeful availment satisfies the "fair warning" requirement that a nonresident defendant have "fair warning that a particular activity may subject [it] to the jurisdiction of a foreign sovereign."[29]  This "ensures that a defendant will not be haled into a jurisdiction solely as

---

[24]*See Trujillo v. Williams*, 465 F.3d 1210, 1218 n.7 (10th Cir. 2006).

[25]*Pro Axess, Inc. v. Orlux Distribution, Inc.*, 428 F.3d 1270, 1276 (10th Cir. 2005).

[26]*Id.* (quoting *World-Wide Volkswagen*, 444 U.S. at 297).

[27]*Id.* at 1276-77 (quoting *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998)).

[28]*Hanson v. Denckla*, 357 U.S. 235, 253 (1958) (citation omitted).

[29]*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (quoting *Shaffer v. Weitner*, 433 U.S. 186, 218 (1977)) (internal quotation marks omitted).

9

a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person."[30]

"A contract between an out-of-state party and a resident of the forum state cannot, standing alone, establish sufficient minimum contacts with the forum."[31]  However, where the contract has a "*substantial* connection" with the forum state, the out-of-state party demonstrates purposeful availment by entering into it.[32]  Thus, in *Burger King Corporation v. Rudzewicz*, the Supreme Court found specific personal jurisdiction over a nonresident defendant who entered into a 20-year franchise agreement with the forum-resident plaintiff "that envisioned continuing and wide-reaching contacts" with the plaintiff in the forum.[33]  In so doing, the Court highlighted a series of factors to consider in determining whether entering into a contractual relationship with a forum resident constitutes purposeful availment: (1) prior negotiations, (2) contemplated future consequences, (3) the terms of the contract, and (4) the actual course of dealing.[34]

In this case, the Court finds that Defendants' contacts with the State of Utah are insufficient to allow an exercise of personal jurisdiction.  Even assuming the existence of an employment agreement between Mr. Thomas and Defendants, contracting with a forum resident

---

[30]*Id.* at 475 (internal citations and quotation marks omitted).

[31]*Benton*, 375 F.3d at 1077; *see also Burger King*, 471 U.S. at 479 ("If the question is whether an individual's contract with an out-of-state party *alone* can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot.").

[32]*Burger King*, 471 U.S. at 479-80 (quoting *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957)).

[33]*Id.* at 480.

[34]*Id.* at 479.

does not, of itself, constitute purposeful availment.  Thus, Plaintiffs must either show that the alleged employment agreement has a substantial connection to the State of Utah or assert some other factual basis to support an exercise of specific jurisdiction.

Plaintiffs rely on the following alleged contacts of Defendants in their attempt to show purposeful availment: (1) employment negotiations between Defendants and Mr. Thomas by telephone while Mr. Thomas was in Utah; (2) arrangements made by telephone while Mr. Thomas was in Utah for Mr. Thomas to travel to Iraq; and (3) paycheck wires made to Mr. Thomas's USAA account, which listed his Utah address.

Other than Mr. Thomas's Utah citizenship, the alleged employment contract between Defendants and Mr. Thomas has no relationship to the State of Utah.  At best, some of the negotiations and other employment-related conversations leading up to Mr. Thomas's employment with Defendants took place over the telephone while Mr. Thomas was located in Utah after their relationship began in North Carolina.  In her affidavit, Plaintiff Young indicates that she "was present on several occasions when Brandon received calls, while in Utah, from representatives from CTU to make arrangements for his employment with CTU" and for his travel to Iraq.[35]  These phone calls are not of themselves enough to establish minimum contacts,[36] but are evidence of negotiations and other employment related conversations that took place while Mr. Thomas was in Utah.  However, Plaintiffs admit that negotiations between Defendants and Mr. Thomas began while Mr. Thomas was receiving training at Fort Bragg in North Carolina and offer no evidence regarding where the alleged employment contract was finalized.

---

[35]Docket No. 20 Ex. 1, at ¶ 8.

[36]*See Benton*, 375 F.3d at 1077.

Moreover, it was only after Mr. Thomas returned to Utah that the telephone negotiations took place.  In this regard, it appears merely fortuitous that Mr. Thomas happened to be a citizen of Utah and happened to return to Utah after beginning employment negotiations in North Carolina.

More important, the alleged employment contract was for services to be performed by Mr. Thomas entirely outside of Utah—specifically, in Iraq.  As per the Complaint, Mr. Thomas was killed in Iraq while performing the alleged employment agreement.  Although, Plaintiff Young indicates that Mr. Thomas's paychecks were wired to his USAA savings account, which listed his Utah address, there is no indication that this account was located at an institution in Utah.  Moreover, there is no evidence that Defendants selected the USAA account for deposit of Mr. Thomas's paychecks.  Thus, the contemplated future consequences, the terms of the contract, and the actual course of dealing all weigh heavily against finding purposeful availment based on the alleged employment contract.

Plaintiffs also argue that Defendants purposefully targeted Mr. Thomas for employment because of his training, which he received by virtue of his membership in the Utah National Guard.  However, this cannot support a finding of purposeful availment.  Otherwise, employers would be subject to jurisdiction in every state where any of their employees received educational training.  Such a position surely does not comport with due process requirements.

In sum, the relationship between Mr. Thomas and Defendants began in North Carolina and contemplated Mr. Thomas performing services in Iraq.  The fact that some of the negotiations and other employment arrangements took place over the telephone while Mr. Thomas happened to be in Utah is not enough to show that Defendants purposefully availed themselves of the privilege of conducting activities in Utah.  Rather, these are the type of

fortuitous and attenuated contacts upon which the Court may not base an assertion of personal jurisdiction.  Consequently, the Court grants Defendants' Motions to Dismiss.

Because the Court finds that Defendants do not have minimum contacts with the State of Utah, the Court need not determine whether the exercise of specific personal jurisdiction would be constitutionally reasonable or whether venue is proper.

## IV.  CONCLUSION

For the reasons stated above, it is hereby

ORDERED that Plaintiffs' Motion to Strike Affidavit of Judy Feeney [Docket No. 18] is DENIED AS MOOT.  It is further

ORDERED that Defendant CTU, Inc.'s Motion to Strike Affidavit of Carol Thomas Young [Docket No. 28] is GRANTED IN PART AND DENIED IN PART as outlined above.  It is further

ORDERED that Defendant CTU, Inc.'s Motion to Dismiss [Docket No. 12] and Defendant Donald M. Feeney, Jr.'s Motion to Dismiss [Docket No. 39] are GRANTED.  It is further

ORDERED that this case is DISMISSED WITHOUT PREJUDICE and the Clerk of the Court is directed to close the case forthwith.

DATED April 3, 2008.

BY THE COURT:

_____
TED STEWART
United States District Judge

13